**COHELAN KHOURY & SINGER**
Timothy D. Cohelan (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
J. Jason Hill (SBN 179630)
jhill@ckslaw.com
605 "C" Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3001/Fax: (619) 595-3000

Attorneys for Plaintiff KEITH SCHRENK, dba "THE CAR BARN,"
on behalf of himself, all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA- SACRAMENTO DIVISION

| | |
|---|---|
| KEITH SCHRENK, dba "THE CAR BARN," on behalf of himself and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CARVANA, LLC, an Arizona Limited Liability Company; CARVANA GROUP, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 2:19-cv-01302-TLN (CKD)<br><br>**DECLARATION OF J. JASON HILL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   February 18, 2020<br>Time:   2:00 p.m.<br>Ctrm:   2, 15th Floor<br>Judge:  Hon. Troy L. Nunley<br><br>Complaint filed:   May 24, 2019<br>Removal date:   July 12, 2019<br>Trial Date:   Not set |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

I, J. Jason Hill, declare as follows:

1.      I am a licensed attorney and employee in the law firm of Cohelan Khoury & Singer, co-counsel of record herein for the Plaintiff KEITH SCHRENK dba "THE CAR BARN" and the Proposed Class. I submit this declaration in support of Plaintiff's Opposition to the Motion to Dismiss Plaintiff's First Amended Class Action Complaint filed by Defendants CARVANA, LLC and CARVANA GROUP, LLC ("Carvana"). The following facts are within my personal knowledge and if called to testify I could and would competently testify thereto.

2.      Throughout the proposed Class Period, Carvana has prospered from its unfair competitive practices of selling used vehicle to California consumers without having the required dealership licenses, physical point-of-sale locations, salespersons training and licensing as required by the California Department of Motor Vehicles, and selling vehicles without the proper credentials with the California Bureau of Automotive Repairs. Additionally, solicitations and advertisement in California were used by Carvana for vehicles offered for sale in California, and such advertisements did not make the required disclosure that the listed price excluded tax, title and license fees.

3.      Further, the contracts with consumer purchasers may suggest that the transaction is not a California-based transaction, but Plaintiff has observed Carvana activity at California Smog Certification centers and deliveries of vehicles sold to California consumers.  It is believed that Carvana purchase contracts with consumers contain mandatory individual arbitration and class action waivers such that court action is likely very limited by consumers.

4.      Carvana's claim that it is "not a dealership" is essentially a material mis-representation to the public, at least since April 25, 2019, when they obtained a used vehicle dealership license from the California Department of Motor Vehicles. As of the date of this opposition, Carvana's website still says the contrary.

5.      Additionally, advertisement in California were used by Carvana for vehicles offered for sale in California, and such advertisements did not make the required disclosure that the listed price excluded tax, title and license fees in violation of California Vehicle Code section 11713.1(o). Attached hereto as Exhibit 1 is a true and correct copy of the Curriculum Vitae of

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Joseph Weatherman. Attached as Exhibit 2 is a true and correct copy of the Preliminary Report prepared by Joseph Weatherman. Attached as Exhibit 3 is a true and correct copy of the DMV Dealer Compliance Audit prepared by Joseph Weatherman.

6.      Attached hereto as Exhibit 4 is a true and correct copy of the State of California Department of Motor Vehicles memorandum entitled "Occupational Licensing Industry News, OLIN 2020-04, Online Vehicle Sales and Off-Site Delivery."

7.      Given additional assessment of facts as pled and that know, with the assistance of Mr. Weatherman, can be refined, Plaintiff urges that it is premature to dismiss this case. In this regard, Plaintiff has proposed a draft of a Second Amended Complaint that includes reference to potential expert consultant testimony and analysis that the Court could consider in this request for leave. Attached hereto as Exhibit 5 is a true and correct copy of Plaintiff's Redlined [Proposed] Second Amended Complaint.  Locating a qualified person to speak to very technical issues of California Vehicle Code laws and DMV regulations has been a difficult undertaking. Plaintiff is not seeking any determination of Mr. Weatherman's qualifications to serve as a consultant or expert at this time, but only provides information that based on initial preliminary review supports the factual allegations in this case so as to proceed past the pleading stage of this matter, and perhaps seek limited discovery of the information necessary to substantiate the claims.  As such, by permitting the filing of the propose SAC is not in any way an evidentiary determination at this point of whether Mr. Weatherman can serve as a expert in the matter, but is presented to identify more particular facts as to a cognizable claim made by Plaintiff.

8.       I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 23, 2020 in San Diego, California.

<div align="right">

_____J. Jason Hill_____
J. Jason Hill

</div>

<div style="writing-mode: vertical">COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101</div>

Declaration of J. Jason Hill ISO Plaintiff's Opposition to Motion to Dismiss First Amended Complaint
Case No. 2:19-cv-01302-TLN (CKD)

# EXHIBIT 1

# Joseph Weatherman

◆ Address P.O. Box 883 Aptos Ca 95001        ◆ Email tsm974@gmail.com        ◆ Cell 415-730-3131

## WORK EXPERIENCE

Tristar Motors LLC  – Owner/President/Teacher                                                February 1998 – Current
- DMV certified car dealer education school – www.gotplates.com Certified by the State of California DMV
- Licensed Car Dealer in California – Dealer License 35862  / Auto Broker selling over 100 cars annually
- Execute a 501(c)3 sponsored charity vehicle donation program for Curtin Pacific Institute
- Project Managed the conception of online car dealer educations program including online training education template
- Web Development of over 500 websites for the purposes of marketing and SEO
- Use of AdWords & Google Analytics since 2004 for buying keywords and generating traffic
- Wrote Compliance training programs – dealer education, car buyer bill of right & red flag rules
- Build and utilize a database of 15,000 California car dealers, used for email, mail and other marketing campaigns
- Consult / advise / expert witness for active cases of leading dmv car dealer attorney – www.civilizedlaw.com
- Work closely with entrepreneurs, venture capitalists, lawyers and law enforcement on special projects
- Extensive knowledge of California dealer law, vehicle code and law enforcement policies
- Oversaw the development of a DMV approved car dealer education curriculum
- Build phone, email, fax and document storage, communication, and collaboration platform for 24/7/365 coverage
- Experience building teams to run special projects & capable of scaling organization to accommodate needs

San Francisco Police Dept. – Sergeant of Special Projects / Field Training Officer                Jan 1976 – Apr 1995
- Five medals of Valor, one silver and four bronze, over 100 meritorious conduct awards & commanding officer awards
- Personally trained to completion 30 officers, including high speed pursuit training
- Executed and formalized a gun seizure procedure affirmed by supreme court of California
- Over 1600 hours of in chair court room experience testifying under oath
- Special Project Manager tasked with building state of the art digital document delivery system – Stolen Autos
- Tasked with Special Project of reforming FBI coding for over 500 supervisory officers
- Training officer for weaponless defense, probable cause & ethics & integrity
- Revamped statewide procedural audit of document management system
- Charity operations manager for Tom Kracke relief fund ($130K+ raised for medical bills)

JP's Five Star Cafe – Founder / Owner                                                        1989 – 1992
- Build, designed, operated, & hired staff of over 30 to run and operate 50's diner
- Over $2M in annual gross sales & 2 years of net profits

First Class Glass – Founder / Owner                                                        1981 – 1993
- Designed custom commercial stained glass imported from Mexico
- Ran and operated location on Filbert & Octavia in San Francisco with 5 staff
- Over 10 employees and $400,000 in annual gross sales

Tristar Transport – Founder / Owner                                                        1995 – 1998
- Coordinated with Organ donation for medical transplant of organs, medical staff and delivery team
- Body guard for music and film industry (client references available upon request)
- Security consultant for transportation services & onsite security

## EDUCATION

University of San Francisco                                                            Economics & Business

SKILLS

HTML ♦ Word, Excel, PowerPoint ♦ Database Management  ♦ Marketing and Advertising  ♦ Web Design ♦ Search Engine Optimization  ♦  RSS Feed
Syndication ♦ Email Campaign ♦ SEO Consultation ♦ Google and Yahoo Expert ♦ Business Development ♦

# EXHIBIT 2

**TriStar Motors LLC**

**Carvana 112020**

# got plates?

Established 1998

Non Compliant CA Dealership Issues

Jason Hill Esquire

Confidential Carvana Preliminary Report

Dear Jason,

Enclosed you will find a summary of the report I have created for you.

Please let me know if you have any questions.

WEATHERMAN 11/23/20.

Joseph Weatherman

TriStar Motors LLC

Carvana 112020

## ASSUMPTIONS BASED ON THE PUBLIC RECORD

1. Carvana was founded in Georgia 2013

2. Carvana holds dealer licenses & lenders license in Georgia &  California

    a. As Carvana in Winder Ga UCAR040499

    b. As Carvana in Atlanta Ga UCAR042396

    c. As Carvana Group LLC in Georgia SCRD66074309

    d. As Carvana LLC in San Diego Ca DLR99136Main

    e. As Carvana LLC in Newark Ca DLR99136Branch1

    f. As Carvana LLC in Ontario Ca DLR99136Branch2

    g. As Carvana LLC in Westminster Ca DLR99136Branch3

3. Carvana holds CDTFA Resale account 246071808

4. Carvana meets CA nexus requirements for Out of State Sellers

5. Carvana must register in California as an Out of State seller.

6. Carvana is a BPA registration agent in California.

## CALIFORNIA BUSINESS PRACTICES

1. DMV Management on notice of alleged illegal Carvana activity.

2. CDTFA notified of possible tax accounting errors by Carvana

3. Carvana advertises directly to California consumers.

4. Carvana sources its vehicles primarily in California.

5. Carvana operates from 19 CA locations, primarily unlicensed.

2

**TriStar Motors LLC**

**Carvana 112020**

6.  Carvana does not prepare & certify vehicles to California standards.

    a.  Inspection Notice & Access to Vehicle prior to sale

    b.  FTC Federal Buyers Guide ($41k fine possible)

    c.  Wet Signature requirements on reg262 and ROS

7.  Carvana registration/tax for posting sales tax by county with no ROS

8.  Carvana delivery practices do not meet DMV Memo 2020-04 requirements.

9.  Carvana posting of Georgia TOP illegal on California deliveries per GIADA.

10. Carvana fails to meet Regulation Z requirements.

11. Carvana signed PA consent decree and paid $117,375 fine.

12. Carvana signed AZ as principal place of business with unlicensed installment sales.

v

## ADVERTISING & DELIVERY PRACTICES

13. Carvana advertises directly to California consumers

14. Carvana does not post as per California DMV Rules for Car Dealers.

15. Carvana does not offer the Ca Car Buyer Option.

16. Carvana does not meet the requirements of 2020 DMV Memo 04

17. Carvana solicits California consumers for California vehicles to resell.

18. Carvana employs unlicensed salespersons for sales & delivery in California.

19. Carvana fails these specific vehicle code sections:

       11713.18a6 certified vehicles

       11713.1t federal buyers guide

       11713b1a advertised vehicle location

20. Carvana delivers vehicles in California on out of state commercial tow trucks.

21. Carvana does not post the required TOP from the CA electronic ROS system.

3

**TriStar Motors LLC**

**Carvana 112020**

**22.** Carvana does not collect wet signatures at delivery.

  Bill of Sale with POA REG262

  Report of Sale REG51

**23.** Carvana does not meet its BHPH requirements for California dealers.

  Carvana does not offer 30 days 1000 mile warranty as Ca BHPH 10% rule requires.

## UNANSWERED QUESTIONS

**24.** Does Carvana post sales tax correctly on every California sale?

**25.** Does Carvana obtain smog, safety and VIN verifications prior to sale in California?

**26.** Does Carvana have a copy of their California Dealer Training Certificate?

**27.** Does Carvana post ANY salesperson licenses at its 4 California locations?

**28.** Does Carvana charge customers a preparation fee on each sale?

## CALIFORNIA DMV MEMO 2020-04

**29.** Establishes a temporary procedure for California Dealers to make deliveries.

**30.** Waives 11714b CVC sales only at licensed location

**31.** Waives 11735d CVC only licensed brokers may deliver

**32.** Requires strict adherence to DMV preparation & advertising rules.

**33.** Maintains wet signature requirement for REG262/POA & ROS.

**34.** Dealer must deliver vehicle from its CA licensed location.

**35.** Carvana is using CA licensed auction locations for inventory storage.

4

**TriStar Motors LLC**

**Carvana 112020**

## CARVANA STAFF & VENDORS

**36.** Founder Eddie Garcia III

**37.** Founder Ryan Keeton

**38.** Founder Ben Huston

**39.** Lead Shareholder Eddie Garcia II

**40.** Corporate Counsel VP Paul Breaux

**41.** Carvana Vendor Kate Carver PR Firm 212-656-9148

**42.** Carvana Vendor Dealer Track VP Chuck Prentice 916-548-4060

## DMV & STATE MANAGEMENT WITH CARVANA KNOWLEDGE
v

**43.** Director Steve Gordon

**44.** Retired Director Jean Shiomoto

**45.** Deputy Director Kathleen Webb

**46.** DMV Investigations / Licensing

Chief Thomas Wilson

Deputy Chief Mary Bienko

Retired Sgt, Calvin Woo

Inspector Juana Anderson

Retired Chief Elizabeth Humphries

Acting Chief Ailene Short

DMV Legal Officer Sherri Miller

DMV Deputy Chief Wesley Goo

5

**TriStar Motors LLC**

**Carvana 112020**

**47.** Deputy Director Andrew Conway DMV Registration

**48.** Manager Marvin Hardley DMV Registration

**49.** CDTFA Counsel Michele Pielsticker

**50.** Retired DMV Manager Claudia Patton

## EXPERT CONSULTANTS

**51.** Retired DMV Instructor Kevin Kellerman (DMV Director Applicant)

**52.** Retired SFPD Inspector Glenn Sylvester (DMV Director Applicant)

**53.** Retired IADAC Director Larry Laskowski

**54.** Sgt Blake Schnabel CHP Auto Theft Task Force

**55.** Carmax Auction Director VP Fred Stark

**TriStar Motors LLC**

**Carvana 112020**

CDTFA = California Department of Tax & Fee Administration

BPA = Business Partner Automation program which allowsin office  issuance of registration cards, license plates and stickers for California Dealers & Registration Agents

FTC = Federal Trade Commission

Wet Signature = Actual Signature with a pen on required document.

REG262 = California DMV Bill of Sale Form with Power of Attorney

ROS = California DMV Report of Sale Form REG51

DMV Memo 2020-04 = Online Vehicle Sales & Off-Site Delivery Guidelines issued May 2020

TOP = Temporary Operating Permit

GIADA = Georgia Independent Auto Dealers Association

Regulation Z = Federal Mandate for document review period

Ca Car Buyer Option = California Mandate for used vehicles less than $40K sales price

License Salesperson = California Mandate for Used Car Dealer Employees

Electronic ROS = California Mandate to issue all temporary operating permits electronically

BHPH = Buy Here Pay Here Used Car Dealers

BHPH 10% Rule = California Mandate for 30 day / 1000 mile included warranty on ALL vehicles offered for sale when BHPH loans exceed 10% of all wehicles sold

VIN = Veehicle Identification Number

Vehicle Verification = California Mandate for vehicle inspection for out of resord. Revived salvage and out of state vehicles

Dealer Training Certificate = California mandates one owner / member of each dealership take pre-license training and pass a test at DMV. Renewal certification then required every 2 years

Preparation Fee = California mandates a document preparation fee not to exceed $70. and if BPA then not to exceed $85.

7

**TriStar Motors LLC**

**Carvana 112020**

Licensed Auction = California Used Car Dealers offering cars for sale via auction

Dealer Track = Automotive Industry Firm and First Line Provider of BPA services for Used Car Dealers as Second Line Providers

DMV Investigations = DMV Police headed by Chief Thomas Wilson and staffed by approximately 200 officers statewide

DMV Licencing = DMV Occupational Licencing Unit headed by Chief Allene Short with 20 DMV Inspectors statewide

DMV Registration = DMV Registration Services Unit headed by Deputy Director Andrew Conway

DMV Manager = Mid Level DMV Management rated 1 thru 5 and staffed to run all DMV field offices

DMV Instructor = Individual with approved training module for DMV training courses

SFPD Inspector = San Francisco Police Rank as Investigator

IADAC = Independent Auto Dealers Association of California

We do have four instances of sold Carvana vehicles in transit in California with photos.

Vehicles in transit have apparently illegal Georgia TOP or NO TOP at all

Delivery Tow Trucks making California deliveries have expired Georgia TOP or Georgia Plates

All witnesses to these deliveries are available

Blafer, Bough, JLW

11/23/20

Carvana Preliminary Report 8 pages

Joseph Weatherman 11232020

# EXHIBIT 3

TriStar Motors LLC

Forms Kit 112020



Established 1998

Non Compliant CA Dealership Issues

Jason Hill Esquire

Confidential Carvana Report 112020

Dear Jason,

Enclosed you will find our Compliance Forms Kit.

Pease let me know if you have any questions.

Warm regards,

**Joseph Weatherman**
TRISTAR MOTORS LLC



800-901-5950

admin@gotplates.com

JOSEPH WEATHERMAN

**TriStar Motors LLC**

**Forms Kit 112020**

## CALIFORNIA DMV FORMS

**1.** Bill of Sale + POA

**2.** Duplicate Title Request

**3.** Certificate of Repossession

**4.** Declare Vehicle Weight (English + Spanish)

**5.** Permanent Trailer Application

**6.** Used Car Dealer Checklist

**7.** Salesperson Application

**8.** Record of Complaint (English + Spanish)

**9.** Vehicle Verification

**10.** Out of State Title (ENGLISH + Spanish)

**11.** DMV Refund Request

**12.** Lien Sale Application

**13.** Salvage Application

**14.** Traffic Accident Report

**15.** Disabled Plate/Placard Application

**16.** Temporary Disabled Placard

**17.** Non Resident Military Exemption

**18.** Errors & Erasures (English + Spanish)

**19.** Vehicle Registration Request

**20.** Required Salvage Inspection

**21.** Certificate of Non Operation

**22.** DMV Transmittal

**23.** Vehicle Insurance Program

**TriStar Motors LLC**

**Forms Kit 112020**

**24.** Statement of Facts (English + Spanish)

**25.** Duplicate/Replace Salesperson License

**26.** LiveScan in Triplicate

**27.** Missing Plates/Stickers

**28.** Change of Address (English + Spanish)

**29.** Lien Satisfy

**30.** DMV Records Request

## TRISTAR COMPLIANCE FORMS

**31.** Inspection of Vehicle Notice

**32.** Notice to Public Car Buyer Option

**33.** Notice to Public No Cooling Off Period

**34.** DMV Dealer Guide

**35.** Dealer to Dealer Brochure

**36.** Licensed Salesperson Handbook

**37.** Dealer Application Handbook

**38.** Broker Delivery Request

**39.** 2020 Dealer Cost Sheet

**40.** 2020 DMV Inspector List

**41.** Vehicle Safety Report

**42.** 2019 Retail Sale Checklist

**43.** Test Drive / Personal Use Report

**44.** Signs at Delivery Notice

**45.** Electronic ROS Guide

**46.** Course Evaluation

**TriStar Motors LLC**

**Forms Kit 112020**

**47.** 2016 Vehicle History Checklist

**48.** Prop 65 Stmt of Facts (English + Spanish)

**49.** Prop 65 Brochure

**50.** 2103 Dealer Checklist

**51.** FTC Federal Buyers Guide (English + Spanish)

**52.** 2016 Red Flag Rules

**53.** IADAC Brochure

## RETAIL SALE FORMS

**54.** Stmt of Facts (English + Spanish)

**55.** Insurance (English + Spanish)

**56.** Car Buyer Option (English + Spanish)

**57.** Credit Application (English + Spanish)

**58.** Adverse Action Notice

**59.** Translated Contract Notice

**60.** Conditional Sales Contract 2016/553-ARB (English + Spanish)

**61.** FTC Federal Buyers Guide (English + Spanish)

**62.** Pre Contract Disclosure

**63.** Contact Authorization

**64.** Prop 65 Sticker

**65.** Song Beverly As Is Sticker

**66.** Not for Sale Sticker

# EXHIBIT 4

STATE OF CALIFORNIA

# Occupational Licensing Industry News
# OLIN 2020–04
# Online Vehicle Sales and Off-Site Delivery

DIGITAL INFORMATION BRANCH • CUSTOMER SERVICES DIVISION • © 2020 STATE OF CALIFORNIA, DEPARTMENT OF MOTOR VEHICLES. ALL RIGHTS RESERVED.

## Effective Immediately

## Purpose

Due to the COVID-19 outbreak, a *Proclamation of a State of Emergency* was issued by California Governor Gavin Newsom. On March 19, 2020, Executive Order N-33-20 was issued which exempted from the stay at home order "essential critical infrastructure workers" needed to maintain continuity of essential critical infrastructure designated by the State Public Health Officer.

On April 28, 2020, in accordance with the Order, the State Public Health Officer designated workers critical to the manufacturing, distribution and sales of vehicles as essential critical infrastructure workers, subject to adhering to the public health guidelines issued by the California Department of Public Health (CDPH).

This memorandum clarifies the requirements for online vehicles sales and off-site delivery of a vehicle to a purchaser during this outbreak period.

## Online Sales Transactions and Off-Site Vehicle Delivery

The *Vehicle Code* (VC) requires vehicle sales be conducted through a licensed location. This requirement applies to brick and mortar vehicle dealerships transactions and to online sales transactions conducted through brick and mortar dealer licensees. The vehicle offered for sale by the dealership must be present at the dealership's licensed location at the time of the sales transaction or be available to the dealer directly from the manufacturer or distributor of the vehicle at the time of the advertisement or the offer of the vehicle for sale. The sale takes place at the licensed location and meets the requirements of VC §11714(b). Accordingly, the dealership is permitted to deliver the vehicle to the customer at an off-site location in order to complete the sale through the licensed location as required by VC §5901(d). The dealer and salesperson must comply with all sales related requirements of the VC before, during, and after the sale of the vehicle.

## Compliance Requirements

- All products must be contracted for sale prior to the delivery of the vehicle.
- All terms of the transaction must be agreed upon prior to the delivery of the vehicle at an off-site location. Negotiations may not be conducted at the purchaser's delivery location.
- All contracts must be signed by the dealership before delivery of the vehicle at the off-site location. The purchaser may sign the contract at the time of delivery.
- Any person engaged in the negotiation and sale of the vehicle must be a licensed salesperson.
- A copy of all notices to the consumer required by the VC and the *Civil Code* must be provided to the purchaser **before** the purchaser executes all sales related documents, such as the notice of the right to inspection, etc.

© 2020 State of California, Department of Motor Vehicles. All rights reserved.  Visit our Web Site—dmv.ca.gov

**Compliance Requirements,** *continued*

- All Regulation Z disclosures must be provided to the purchaser and the purchaser must be given an opportunity to review **prior** to purchaser's execution of sales related documents.
- All state and local social distancing requirements must be adhered to at the time the vehicle is delivered.
- Adherence to social distancing requirements and sanitization of the vehicle is required if a test drive of the vehicle occurs.

> **NOTE:** For further information, consult the Centers for Disease Control and CDPH websites. Consult your legal counsel if you have questions regarding the requirements of the VC and other applicable statutes and regulations. Any deceptive or fraudulent activities occurring in the offer of or during the vehicle sales transaction should be reported to the local office of the Department of Motor Vehicles (DMV) Investigations Division.

**Background**

A dealership selling new or used vehicles, at retail or at wholesale, must possess a valid dealer license issued by the DMV's Occupational Licensing Branch (OLB). A salesperson engaged in the sales transaction, on behalf of the dealer, must also possess a valid salesperson license issued by OLB.

Although the VC does not specifically address or prohibit online sales of vehicle inventory and delivery of the vehicle to an off-site location from a dealership's licensed established place of business, adherence to other requirements of the vehicle sales transaction regulated by the VC, the *Civil Code*, the *Business and Professions Code*, and other codes, is required.

**References**

*Vehicle Code* §§5901(d), 11713(b), and 11714(b)

**Distribution**

Notification that this memo is available at **dmv.ca.gov** was made via California DMV's Automated Email Alert System in May 2020 to the following:

- Dealers
- Registration Services

**Contact**

Questions regarding this memo may be directed to Occupational Licensing Compliance Services and Support Unit at (916) 229-3346.

# EXHIBIT 5

**COHELAN KHOURY & SINGER**
Timothy D. Cohelan (SBN 60827)
tcohelan@ckslaw.com
J. Jason Hill (SBN 179630)
jhill@ckslaw.com
605 "C" Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3001/Fax: (619) 595-3000

Attorneys for Plaintiff KEITH SCHRENK dba "THE CAR BARN,"
on behalf of himself, all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA-

## SACRAMENTO DIVISION

| | |
|---|---|
| KEITH SCHRENK dba "THE CAR BARN," on behalf of himself and all other persons similarly situated, Plaintiffs, vs. CARVANA, LLC, an Arizona Limited Liability Company Corporation; CARVANA GROUP, LLC, a Delaware Limited Liability Company and DOES 1 through 10, Inclusive, Defendants. | Case No. 2:19-cv-01302-TLN (CKD) ~~FIRST~~ [Proposed] SECOND AMENDED CLASS ACTION COMPLAINT FOR RESTITUTION, DAMAGES, DISGORGEMENT OF PROFITS AND~~/OR INJUNCTIVE/~~ DECLARATORY RELIEF **1. VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), Cal. Business & Professions Code §§ 17200-17208, *et seq*.; 2. VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW ("FAL"), Cal. Business & Professions Code § 17500, *et seq*. 3. VIOLATIONS OF THE UNFAIR PRACTICES ACT ("UPA"), Cal. Business & Professions Code §§ 17030-17044, *et seq*. **DEMAND FOR JURY TRIAL** |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Plaintiff KEITH SCHRENK, sole proprietor, dba "THE CAR BARN," on behalf of himself and all others similarly situated ("Plaintiff" or "SCHRENK"), hereby complains and alleges as follows based on investigation, information, and belief:

## INTRODUCTION AND GENERAL ALLEGATIONS

1. This lawsuit involves a used car retail sales competitor operating and doing business as a dealership, but without procuring, paying, and obtaining all necessary licensure, locations, and regulator prerequisites required to lawfully engage in vehicle sales in the State of California. In essence, by skipping all the legal and regulatory requirements, the Defendants are engaged in classic anti-competitive "loss leader" conduct and business practices by simply disregarding the overhead costs required to engage in commercial retail vehicle sales in California.

2. Plaintiff KEITH SCHRENK previously owneds and is was the sole proprietor of a duly licensed and registered California "used vehicle dealership" and is doing business as "THE CAR BARN" located in Sacramento County in the State of California. SCHRENK brings this action as a proposed class action pursuant to Federal Rules of Civil Procedure, Rule 23 as an injured competitor seeking to compete against Defendants CARVANA, LLC, an Arizona Limited Liability Company Corporation;  CARVANA GROUP, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive (hereinafter collectively referred to as "CARVANA") in relation to their engagement in anti-competitive and unlicensed sales of used vehicles in the State of California without compliance with all laws and applicable regulations that are required to be followed by all other California dealerships doing business in California. Plaintiff brings this action pursuant to the California Unfair Competition Law ("UCL") as permitted by Cal. Business & Professions Code sections 17200, *et seq*., and under California's False Advertising Law ("FAL") as permitted by Cal. Business & Professions Code sections 17500, *et seq*. on behalf of himself and all other individuals and entities in the State of

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

California to address illegal, fraudulent, and unfair (and unlicensed) business activity for the sale of motor vehicles in California by the CARVANA Defendants, and DOES 1 through 10. SHRENK dissolved and wound down his used car dealership in late 2019 through early 2020 after being unable to compete with the CARVANA Defendants, who were delivering vehicles for sale in California within a few blocks of his used car sales lot.

3.    Further, as demonstrated by the facts below and throughout this Complaint, the CARVANA Defendants and DOES 1-10 engaged in illegal loss-leader conduct in violation of the California Unfair Trade Practices Act ("UPA"). Without payment of such legally and regulatory required costs of doing business, the CARVANA Defendants are and were able to sell vehicles at below market prices that injured lawful and law-abiding dealers and salespersons in the State of California. Accordingly, Plaintiff will seek, on behalf of himself, and all others similarly situated, treble damages as permitted by the UPA in an amount according to proof.

4.    Specifically, Plaintiff alleges based on investigation, information and belief, the following facts:

(a)    In or around mid-2018, the CARVANA Defendants began unlicensed operations as a "used car automotive dealership" actively and aggressively engaged in the sales of used vehicles in the State of California and the marketing of same via television, internet, social media platforms, broadcast, and through use of used vehicles sales marketing by entities such as "craigslist.com" "autotrader.com" or through their own website portal, www.carvana.com;

(b)    CARVANA Defendants sold used vehicles in California. According to California Commercial Code section 2401(2)(b): "Unless otherwise explicitly agreed title passes to the buyer *at the time and place at which the seller completes his performance with reference to the physical delivery of the goods*, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by a bill of lading (b) if the contract requires delivery at destination,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint                                    Case No. 2:19-cv-01302-TLN (CKD)

title passes on tender there." (emphasis added.) Thus, sales occur at the time and place at which the seller physically delivers the goods. Therefore, when Defendants deliver used vehicles to customers in California, these sales are California sales which subject Defendants to California's laws, as discussed herein.

(c)     At all times relevant to this action, the CARVANA Defendants did not seek, obtain, or possess any license from either the California DMV or other local business licensing (either by County or municipality) to operate as a used vehicle sales dealership;

(d)     At all times relevant to this action, the CARVANA Defendants did not maintain or disclose a physical location for operation of selling used motor vehicles in the State of California in direct violation of the California Civil Code and applicable DMV regulations;

(e)     At all relevant times to this action, the CARVANA Defendants actively engaged in all modes and media (internet, broadcast, social media, and internet auto sales websites) of marketing and selling of used motor vehicles with list prices that did not disclose that the list price excluded any fees, tax, title, and license charge to complete a lawful vehicle sale in California, in violation of Cal. Vehicle Code section 11713.1. As of May 13, 2019, Plaintiff reviewed multiple "CARVANA" advertisements on "craigslist.com" and each failed to disclose all transaction fees in the listing price for used motor vehicles for sale throughout the State of California, falsely implying to the public and to legitimate competing automotive dealerships, that taxes, title, and licensing costs were included in the list price for the vehicle;

(f)     As of May 20, 2019, Plaintiff visually observed the CARVANA Defendants operating out of a physical location in close proximity to Plaintiff's "THE CAR BARN" licensed dealership, and each vehicle being delivered to CARVANA customers did not have a prominently displayed "Buyer's Guide" which is required by law in the State of California to be place on the vehicle at the time of sale. This activity by the CARVANA Defendants violates Cal. Vehicle Code section 11713.1(t) and violates mandates by the Federal Trade Commission ("FTC") regulations at 16 C.F.R. Part 455. Without the required Buyer's Guide documentation, a reasonable consumer would not know whether the vehicle being sold is a "new" or a "used" vehicle and would not be advised of any material attributes about the vehicle. Plaintiff, as a licensed used motor vehicle dealership, must comply

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 3 -

with such legal and regulatory requirements or face fines, levies, and/or loss of his dealership license;

(g)     At all times relevant to this action, Plaintiff is informed and believes that the CARVANA Defendants not only actively sold vehicles without any licensure, but also have no requirement to renew and pay for an auto dealership license and do not pay for a required physical location in each major location throughout the State of California to actually show and allow view of used vehicles for sale, all in violation of the California Vehicle Code and applicable regulations promulgated and enforced by the California Department of Motor Vehicles ("DMV"). Plaintiff has made informal complaints to the DMV since mid-2018 when CARVANA began operating and actively selling vehicles in Sacramento County, but was informed that since CARVANA did not have an in-state location, the DMV did not believe it had the ability to enforce dealership licensing and regulation. In other words, absent this action by SCHRENK, there appears no willingness on the part of California state entities or agencies to enforce law or applicable regulations upon CARVANA, while at the same time, legitimate and lawful dealerships are suffering sales losses at the expense of CARVANA who is not complying with law and is committing fraud and deception on the public;

(h)     Based on observation, information, investigation and belief, Plaintiff alleges that the CARVANA Defendants also employ used vehicle "salespersons" unlawfully and without having a dealership license or local operating license, nor do the CARVANA Defendants have to engage in required fees and license renewal, or continuing educational requirements (4 hours every two years) as required by Cal. Vehicle Code sections 11704.5(c) and 11717(d). Thus, CARVANA is gaining an illegal competitive advantage over Plaintiff and other similarly-licensed automotive dealerships operating lawfully in the State of California;

(i)     The CARVANA Defendants' use of unauthorized and unlicensed "salespersons" including the use of referrals and finders through the internet or social media is in direct violation of law pursuant to Cal. Vehicle Code sections 11800 and 675. Even the use of salespersons outside of the State of California for directing and controlling sales of used motor vehicles within California is illegal, unlawful, deceptive on the public, and fraudulent;

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

(j)    Based on information, observation, and belief, Plaintiff alleges that during the relevant time period, the CARVANA Defendants failed to comply with notice requirements for "no cooling off periods" but instead markets a non-contractual 7-day return policy which California law does not authorize, and is implemented by CARVANA on an *ad hoc* basis. Because CARVANA requires purchasers to arbitrate disputes rather than allow for open litigation in Court, there is no way to determine whether CARVANA does anything to honor to its claimed 7-day "grace period" promise that it markets to consumers;

(k)    CARAVANA also engages in the false claim of selling "certified" used vehicles even though the Defendants do not maintain any licenses or permits from the Bureau of Automotive Repair ("BAR"); do not maintain local Board of Equalization permits for vehicle re-sale (and for collection of sales taxes); do not maintain any required City or County business licenses (as otherwise required to be paid and renewed by Plaintiff); and there are no filings for fictitious business name statements being on file as required by Cal. Vehicle Code sections 11817(a)(6) and 11721(f). Without a physical location address for CARVANA "dealerships," there is no lawful way to procure a certification from the BAR. (See, www.bar.ca.gov.);

(l)    Plaintiff is informed and believes and based thereon alleges that the CARVANA Defendants also engaged in unlawful and fraudulent record keeping of sales requirements in that they have no identified, conspicuous "established place of business," and therefore do not have a location for inspection of point-of-sale records for used vehicle sales in violation of Cal. Vehicle Code section 4456 and as required by California Code of Regulations ("CCR"), Title 13, sections 270.00-272.00;

(m)    At all relevant times, based on investigation, observation, information and belief, Plaintiff alleges that in all respects, the CARVANA Defendants engaged in competition with lawfully licensed auto-dealerships while engaging in dealership activities and actions as defined by Cal. Vehicle Code sections 285-286, while purposefully avoiding the legal requirements mandated by law to engage in motor vehicle sales in California. Cal. Veh. Code section 285 defines a "dealer" as a person not otherwise excluded by Section 286 who "(a) [f]or commission, money, or other thing of value, sells, exchanges, buys, or offers for sale, negotiates or attempts to negotiate, a sale or

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

exchange of an interest in, a vehicle subject to registration, a motorcycle, snowmobile, or all-terrain vehicle subject to identification under this code, or a trailer subject to identification pursuant to Section 5014.1, or induces or attempts to induce any person to buy or exchange an interest in a vehicle and, who receives or expects to receive a commission, money, brokerage fees, profit, or any other thing of value, from either the seller or purchaser of the vehicle. (b) Is engaged wholly or in part in the business of selling vehicles or buying or taking in trade, vehicles for the purpose of resale, selling, or offering for sale, or consigned to be sold, or otherwise dealing in vehicles, whether or not the vehicles are owned by the person." Defendants deal in and sell vehicles subject to identification under this code. And the exceptions listed in Section 286 are not applicable to Defendants. Therefore, Defendants are "dealers" within the meaning of the California Vehicle Code. Yet Defendants insulate themselves from enforcement activity unlawfully and have successfully evaded any enforcement action by authorities and DMV regulators in California by obfuscating their business activities as dealers and their presence in the state;

(n)     The CARVANA Defendants in their marketing materials actually flaunt the fact that they are not in compliance with California automotive sales laws and regulations promulgated by the California DMV. They boldly claim that there are no CARVANA "Dealerships" and while they market used vehicles for sale with only a list price (and no disclaimer as legally required to show that the transaction will include sales taxes, licensing and any other dealership fees), they advertise, falsely, that they have "no hidden fees." (See, www.carvana.com/about-us.) They also falsely advertise, without any BAR license or certification, that all of their used vehicles for sale are "certified" but provide no definition and without a physical location or license, cannot provide such certification in California without engaging in outright deception and fraud upon the public and as against competitors who must rigorously maintain license and certification requirement in order to sell a used car as "certified" with a standard list of inspections and testing approved by the Bureau of Automotive Repairs.

(o)     By engaging in dealer sales activities without operation of a dealers licensing, physical locations, and strict advertising requirements, the CARVANA Defendants are engaging in loss-leader activity by placing vehicles for sale under market value because they do not

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

incur all the necessary costs and expenses of running and operating a bona fide dealership in California. This illegal short-cut allows Defendants to undermine lawful competitors in price, which is a per se violation of the Unfair Practices Act ("UPA"), Business & Professions Code sections 17030-17044. As shown by the CARVANA business records and press statements, Defendants' purpose and aim is to disrupt the used car market by bypassing all dealership rules and requirements in the State of California all in direct violation of Cal. Business & Professions Code sections 17043-17044.

(p) Based on information, investigation and preliminary consultant review and findings of an expert who has taught California compliance with the Vehicle Code and applicable DMV regulations governing used car dealership licensees, Plaintiff alleges the following additional facts:

(i) Carvana advertises car sales to California consumers statewide and at least some of those advertisements, during the relevant time period did not include mandatory disclosure that the listed price of a vehicle for sale excludes tax, title and DMV license fees inviolation of California law;

(ii) DMV records show that Carvana sources and then sells it used vehicles primarily in CA;

(iii) Carvana does not prepare or certify used vehicles in compliance with CA standards by permitting Inspection prior to sale nor does Carvana comply with "wet signature requirements under Calif. Code of Regulations section 262 or at Register of Sale or Bill of Sale as required by DMV Regulation section 51;

(iv) Carvana reports vehicle sales/deliveries from Georgia and apparently not in California for deliveries made in California to California purchasers even though there is direct observational evidence that Carvana sourced vehicles were sourced and previously licensed in California and then sold to California residents/consumers, which requires both a California dealership license and at the time of California delivery requires licensed motor vehicles salesperson licenses;

(v) DMV records demonstrate that for all or a substantial part of the proposed relevant time period, Carvana employed unlicensed sales person for vehicle delivery in California in violation of California's Vehicle Code;

First Amended Class Action Complaint                              Case No. 2:19-cv-01302-TLN (CKD)

(vi)  There is direct observational evidence that at the time of sale or delivery of vehicles sold to California residents/consumers, Carvana does not provide a federal buyer's guide nor does it show a specific advertised vehicle location in violation of California Vehicle Code sections 11713.18(a)(6), 11713.1(t) and 11713(b)(1)(a);

(vii)  As of November 2020, Carvana operates out of  at least 19 specific California locations but is only has dealership licenses since April 2019 in San Diego, CA, Newark, CA, Ontario, CA and Westminster CA and does not have a dealership license in Sacramento, CA.

5.     Since at least mid-2018, the CARVANA Defendants began active engagement and auto sales in the market for used autos in Sacramento County and surrounding areas. Since that time, Plaintiff, whose lawfully-licensed dealership is located in close physical proximity of a proxy for a CARVANA location, has suffered actual and real monetary loss as a direct result of CARVANA's unfair business acts and practices, as well as their use of false advertising schemes as to the pricing of vehicles. SCHRENK's dealership, "THE CAR BARN," has been in business for approximately 5 to 6 years. Each year since 2014, a ~~decent~~ fair used car market propelled sales for SCHRENK, at least until CARVANA entered the local market with an unlicensed dealership at an undesignated location hundreds of yards from SCHRENK's dealership. From 2014 until 2017, SCHRENK's sales spanned two Sacramento fixed locations with annual unit sales of used vehicles at approximately 397 in 2014, approximately 435 vehicles sold in 2015, 451 vehicles sold in 2016, and approximately 682 vehicles sold in 2017.

6.     In 2018, the CARVANA Defendants entered into the California market and used a location near an auto wholesale lot to engage in dealership sales activity within less than a mile from SCHRENK's "CAR BARN" locations. While SCHRENK's "CAR BARN sales had annually increased since opening in or about 2014, hitting 682 in 2017, in 2018, *after* CARVANA began operations, total annual sales for SCHRENK's dealership dropped to 580 units and a second location for Plaintiff's business ceased operation. While used car sales are

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

competitive and usually with small profit margins after factoring in costs of compliance with licensing and dealership laws and regulation, the loss of over 100 unit sales in one year after several years of increasing unit sales was a major hit to SCHRENK's bottom line. Plaintiff is informed and believes that CARVANA's market entry without paying the true costs of operating an auto dealership is the cause in fact and proximate and substantial factor in sales losses in 2018 and continuing to the present. Simply put, the CARVANA Defendants are engaging in unlawful competition with legitimate licensed and compliant auto dealerships, and in fact markets themselves as beating competition by flagrantly violating laws necessary to do business as a *bona-fide* auto-dealership in California without paying any entry or regulatory costs of doing business, all to the detriment of Plaintiff and the proposed class of licensed dealerships throughout the State of California.

7.     While Plaintiff will retain appropriate accounting consultants to determine actual competitive injury and harm, even if there were a net profit of $500 per vehicle, sales losses hit SCHRENK's bottom line in the area of at least an estimated $51,000 in just 2018 alone. Sales for the first four months of 2019 appear to track the same trend as of 2018, where sales from January through April 2018 reached 210, whereas sales for the same four-month period in 2019 reached only 182 (28 units less). In fact, the sales losses in 2018 initially declined by SCHRENK *after* CARVANA formally announced its entry in the Sacramento market in July 2018. These losses continue as CARVANA's illegal and anti-competitive activities proliferate, in an amount according to proof. Plaintiff intends to use California DMV sales records to show each and every vehicle sold by CARVANA in California during the proposed Class Period (arguably since CARVANA entered the California market) to establish the results of their illegal and fraudulent enterprise and to calculate ill-gotten gains over lawfully and legitimate competitors in the proposed Plaintiff Class to establish restitution as

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  permitted by an accounting under Business & Professions Code sections 17202-

2  17204.

3      8.   On the www.carvana.com website, no physical locations for sale of

4  used vehicles are listed in the State of California, yet CARVANA internet sales

5  advertisements proliferate throughout every major auto market in the state.

6  Further, review of California Secretary of State (Kepler) records show no physical

7  address for any CARVANA location in California. Yet, the company planned and

8  distributed a press release stating it was entering the California mark as of

9  approximately              July              2018.              (See,

10 https://www.businesswire.com/news/home/20180717005237/en/Carvana-Brings-

11 Californias-Capital-City-New-Buy.) In the release, the CARVANA Defendants

12 stated: "Founded in 2012 and based in Phoenix, Carvana's (NYSE: CVNA)

13 mission is to change the way people buy cars. By removing the traditional

14 dealership infrastructure and replacing it with technology and exceptional

15 customer service, Carvana offers consumers an intuitive and convenient online

16 automotive retail platform. Carvana.com enables consumers to quickly and easily

17 buy a car online, including finding their preferred vehicle, qualifying for

18 financing, getting a trade-in value, signing contracts, and receiving as-soon-as-

19 next-day delivery or pickup of the vehicle from one of Carvana's proprietary

20 automated Car Vending Machines." Further, CARVANA admitted it was engaged

21 in sales without a dealership or license: "Shopping online, Carvana customers

22 save valuable time and money with a national inventory of more than 10,000

23 vehicles just a click away and a car buying experience focused on an exceptional

24 customer experience. All vehicles are Carvana Certified, passing a rigorous 150-

25 point inspection, have never been in a reported accident and have no frame

26 damage. Features, imperfections and updated information about open safety

27 recalls are listed on the car's vehicle description page. Additionally, Carvana

28 customers get an upgrade to the traditional test drive; to ensure the vehicle fits

First Amended Class Action Complaint                    Case No. 2:19-cv-01302-TLN (CKD)

their life, every Carvana vehicle comes with a seven-day return policy. All of this without ever having to step foot in a dealership." "Sacramento is a rapidly growing city with an increasingly diverse population," said Ernie Garcia, founder and CEO of Carvana. "We're looking forward to growing alongside them, bringing California's capital a new way to buy a car."

*9.* In a Securities and Exchange Commission ("SEC") filing submitted on March 31, 2017, CARVANA reported annual revenues skyrocketing rom $4.6 Million in 2013 to over $365 Million in 2016. Risks on investment reported by CARVANA to the SEC included specific mention of increased scrutiny of sales, advertising, financing and insurance activities by "private plaintiffs, federal, state and local regulatory and law enforcement authorities" as a risk to potential investors. In fact, CARVANA specifically advised that: "*We operate in a highly regulated industry and are subject to a wide range of federal, state and local laws and regulations. Failure to comply with these laws and regulations could have a material adverse effect on our business, results of operations and financial condition.* We are subject to a wide range of federal, state and local laws and regulations. Our sale and purchase of used vehicles and related activities, including the sale of complementary products and services, are subject to state and local licensing requirements, federal and state laws regulating vehicle advertising, state laws related to title and registration and state laws regulating vehicle sales and service. The financing we offer to customers is subject to federal and state laws regulating the provision of consumer finance. Our facilities and business operations are subject to laws and regulations relating to environmental protection and health and safety. In addition to these laws and regulations that apply specifically to our business, we will also be subject to laws and regulations affecting public companies upon the completion of this offering, including securities laws and NYSE listing rules. The violation of any of these laws or regulations could result in administrative, civil or criminal penalties or in a cease-

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint                    Case No. 2:19-cv-01302-TLN (CKD)

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   and-desist order against our business operations, any of which could damage our

2   reputation and have a material adverse effect on our business, sales and results of

3   operations. We have incurred and will continue to incur capital and operating

4   expenses and other costs to comply with these laws and regulations. Our logistics

5   operations, which we depend upon to transport vehicles from auctions to our

6   inspections and reconditioning centers, then on to our logistics hubs, and finally to

7   our vending machines, fulfillment centers or directly to customers, are subject to

8   the regulatory jurisdiction of the U.S. Department of Transportation (the "DOT")

9   and states through which our vehicles travel, which have broad administrative

10  powers with respect to our logistics operations. Vehicle dimensions and driver

11  hours of service are also subject to both federal and state regulation. More

12  restrictive limitations on vehicle weight and size, trailer length and configuration,

13  or driver hours of service would increase our costs, and if we are unable to pass

14  these cost increases on to our customers, may increase our operating expenses and

15  adversely affect our financial condition, operating results and cash flows. If we

16  fail to comply with the DOT regulations or regulations become more stringent, we

17  could experience increased inspections, regulatory authorities could take remedial

18  action including imposing fines or shutting down our operations or we could be

19  subject to increased audit and compliance costs. If any of these events occur, our

20  financial condition, operating results and cash flows would be adversely affected.

21  Our sale of used vehicles and financing offerings are subject to the state and local

22  licensing requirements of the jurisdictions in which we operate. Regulators of

23  jurisdictions in which our customers reside, but for which we do not have a dealer

24  or financing license, could require that we obtain a license or otherwise comply

25  with various state regulations. Despite our belief that we are not subject to the

26  licensing requirements of those jurisdictions, regulators may seek to impose

27  punitive fines for operating without a license or demand we seek a license in those

28  jurisdictions, any of which may inhibit our ability to do business in those

- 12 -

First Amended Class Action Complaint                    Case No. 2:19-cv-01302-TLN (CKD)

jurisdictions, increase our operating expenses and adversely affect our financial condition and results of operations."

10.  In early 2019, Plaintiff specifically inquired why the DMV was not acting to require the CARVANA Defendants to obtain dealership and vehicle salesperson licensing or to have a fixed physical business location, as is otherwise required for all persons engaged in the retail sales of motor vehicles in California. DMV agents responded that since CARVANA did not have a physical location or presence in the state, they could not engage in an enforcement action.

11.  Plaintiff, based on investigation, information and belief, alleges that other dealerships authorized and licensed to sell used vehicles in the State of California have suffered identical competitive injuries, although the amounts of losses, restitution, and lost profits may vary from Class Member to Class Member. CARVANA's continued presence, operations, advertising, and social media/internet presence in California doing business as an unauthorized re-seller of used vehicles will continue to unfairly gain market share by undercutting the true costs of doing business that are incurred by lawful competitors in the used car sale industry. Defendants' conduct not only is causing direct and measurable harm to Plaintiff, but is causing similar harm and losses to the entire industry of used motor vehicle sales in this state by licensed and authorized dealers.

12.  Pursuant to Federal Rules of Civil Procedure, Rule 23, Plaintiff SCHRENK seeks to represent the following class of individuals and entities as a proposed class representative:

> **PLAINTIFF CLASS**: All California individuals or entities (irrespective of business form) duly licensed by the California Department of Motor Vehicles to operate as dealerships for the marketing and sales of used motor vehicles at any time from four years prior to the commencement of this action until the commencement of trial (or such earlier date as ordered by the Court) (the proposed "Class Period"), as identified by automotive dealership licensee records maintained by the State of California.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 13 -

13.     In all material and legal aspects, the CARVANA Defendants engage in the identical activities of an auto dealership as defined by the California Vehicle Code, but do not maintain any of the required DMV, Board of Equalization, or any county or city required business licenses, nor do they list any permanent or fixed place of business as is required by California law in order to engage in retail used car sales.

14.     Plaintiff seeks restitution, damages, declaratory, and/or injunctive relief based on Defendants' collective unfair, unlawful, deceptive, and anti-competitive "loss leader" conduct. Plaintiff brings this action on behalf of himself and other lawfully operating competitors for harms and actual competitive injuries incurred during the proposed "Class Period," which is defined as four years prior to the filing of this action through the date of the commencement of trial (or such other date as the Court determines). Based upon information and belief that the Defendants' unlawful acts are continuing and will continue, Plaintiff may elect to seek declaratory and/or preliminary/permanent injunctive relief for the benefit of the proposed class he represents.

## JURISDICTION AND VENUE

15.     Defendant removed this action to this Court on July 12, 2019 pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332, 1332(d)(2), 1441, 1446, and 1453, from the Superior Court of the State of California, County of Sacramento. Venue is proper in the United States District Court, Eastern District of California to the extent this Court has jurisdiction under the CAFA.

## THE PARTIES

**A. The Plaintiff and Standing**

16.     At all times relevant to this action, Plaintiff SCHRENK was and is the sole proprietor of the fictitious business entity and duly licensed and authorized used

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

car dealership known as "THE CAR BARN," operating with all necessary local licenses and permits in Sacramento County California. His operational and DMV license number is 84565. As a direct, legal, and proximate cause of Defendants' illegal, fraudulent, unfair, and deceptive business practices and acts of operating as an unlicensed used car dealership in California, Plaintiff has suffered direct, finite financial, and competitive injury and harm through lost sales and inability to compete with the CARVANA Defendants, as a direct result of their unlawful acts of skirting and avoiding the costs of doing business as a bona fide auto dealership in the State of California and as regulated by the California DMV. Plaintiff's current business and dealership physical location is 649 West Elkhorn Blvd., Rio Linda, California 95673. Plaintiff has suffered actual harm and pecuniary loss as a direct, legal and proximate result of Defendants' illegal conduct and acts of unfair competition, all in an amount according to an accounting and in accordance with proof.

**B. The Defendants**

17.    Plaintiff is informed and believes, and based thereon alleges, that CARVANA LLC is an Arizona Limited Liability Company with its headquarters and principal place of business located at 1930 West Rio Salado Parkway, Tempe, Arizona 85281. At present, California Secretary of State and DMV records show no business address within the State of California and no authorized license to do business in California as an auto dealership as defined by the California Vehicle Code or applicable regulations.

18.    Plaintiff is informed and believes, and based thereon alleges, that CARVANA GROUP LLC is a Delaware Limited Liability Company with its headquarters and principal place of business located at 1930 West Rio Salado Parkway, Tempe, Arizona 85281. At present, California Secretary of State and DMV records show no business address within the State of California and no authorized license to do business in California as an auto dealership as defined by

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 15 -

1  the California Vehicle Code or applicable regulations.

2       19.     Plaintiff is ignorant of the true names, capacities, relationships, and

3  extent of participation in the conduct herein alleged, of the Defendants sued herein

4  as DOES 1 through 10, inclusive, but on information and belief alleges that said

5  Defendants are legally responsible for the conduct, business acts, and unlawful,

6  unfair, and deceptive practices alleged herein, and therefore sues these Defendants

7  by such fictitious names. Plaintiff will amend this complaint to allege the true names

8  and capacities of the DOE Defendants when ascertained as permitted by California

9  Code of Civil Procedure section 474.

10      20.     Plaintiff is informed and believes, and based thereon alleges, that each

11 Defendant acted in all respects pertinent to this action as the agent of and/or in

12 concert with the other Defendants, carried out a joint scheme, business plan or

13 policy in all respects pertinent hereto, and the acts of each Defendant are legally

14 attributable to the other Defendants. Plaintiff is informed and believes that

15 CARVANA LLC, CARVANA GROUP LLC, and all DOE Defendants, for

16 purposes of employment policies, hiring, firing, human resources, wages, and

17 benefits, act as a joint employer or joint venture, such that CARVANA LLC,

18 CARVANA GROUP LLC, and any DOE Defendant are to be jointly and severally

19 liable for the unlawful acts as hereinafter described. Further, Plaintiff is informed

20 and believes, and based thereupon alleges, that Defendants, and each of them, each

21 had knowledge and information sufficient to them to have authorized, ratified, and

22 directed the acts of one another as their conduct relates to the Defendants' collective

23 practices and treatment of the proposed class of dealerships herein.

24                        **CLASS ACTION ALLEGATIONS**

25      21.     Plaintiff brings this action on behalf of himself, and all other similarly-

26 situated persons, as a class action pursuant to Federal Rules of Civil Procedure,

27 Rule 23. The class which Plaintiff seeks to represent is composed of and defined as

28 follows:

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**"Plaintiff Class":**

All California individuals or entities (irrespective of business form) duly licensed by the California Department of Motor Vehicles to operate as dealerships for the marketing and sales of used motor vehicles at any time from four years prior to the commencement of this action until the commencement of trial (or such earlier date as ordered by the Court) (the proposed "Class Period"), as identified by automotive dealership licensee records maintained by the State of California.

22.     Further, Plaintiff seeks to certify a subclass of persons, individuals, or entities composed of and defined as follows:

**"The UCL Subclass":**

All members of the Plaintiff Class who, during the Class Period, are owed restitution as a result of Defendants' unfair, unlawful, and deceptive business acts and/or practices of engaging in used auto sales dealership activities in the State of California without any DMV issued dealership license.

23.     Further, Plaintiff seeks to certify a subclass of persons, individuals, or entities composed of and defined as follows:

**"The FAL Subclass":**

All members of the Plaintiff Class who, during the Class Period, were provided incomplete disclosures as to vehicle costs advertised by or on behalf of Defendants for failure to accurately and truthfully state that list prices for used vehicles for sales that expressly disclaimed and excluded taxes, title and license fees.

24.     Further, Plaintiff seeks to certify a subclass of persons, individuals, or entities composed of and defined as follows:

**"The UPA Subclass":**

All members of the Plaintiff Class who, during the Class Period, had reduced or lost sales as a direct and proximate result of Defendants anticompetitive pricing

- 17 -

activity as a "loss leader" for selling used vehicles in the State of California without incurring the necessary costs of fixed overhead dealership locations and DMV and local business licensing fees.

25.     Plaintiff reserves the right under Federal Rules of Civil Procedure, Rules 23(c)(4) and (5) to amend or modify the Plaintiff Class description with greater specificity or further division into subclasses or limitation to particular issues.

26.     This action has been brought and may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23 because there is a well-defined common interest of many persons and it is impractical to bring them all before the court.

27.     **Ascertainable Class**: The proposed Plaintiff class and each Subclass are ascertainable in that their members can be identified and located using information maintained by the California Department of Motor Vehicles and other state and local agencies that regulate used car sale dealerships.

28.     **Numerosity**: The potential quantity of members of the Plaintiff Class and Subclasses as defined is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The quantity of members of the Plaintiff Class and Subclasses is unknown to Plaintiff at this time. However, Plaintiff reasonably estimates that based on industry organization membership that the number of individuals and business entities in the proposed class exceeds 1,000 members. The quantity and identity of such membership is readily ascertainable via inspection California DMV licensee records, which are publicly available.

29.     **Typicality**: The claims of Plaintiff for restitution, lost profits, treble damages, and/or the disgorgement of Defendants' ill-obtained profits, including,

- 18 -

interest, and attorneys' fees, are typical of the claims of all members of the Plaintiff Class and Subclasses mentioned herein because all members of the Plaintiff Class and Subclasses sustained similar injuries, losses, are owed restitution, and/or pecuniary economic damages arising out of Defendants' common course of conduct in violation of law, and the injuries and damages of all members of the Plaintiff Class and Subclasses were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

30. **Adequacy**: Plaintiff is an adequate representative of the Plaintiff Class and Subclasses herein, will fairly protect the interests of the members of the Plaintiff Class and Subclasses, has no interests antagonistic to the members of the Plaintiff Class and Subclasses, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating large class actions and have over 100 years of combined experience in handling class action procedures and class action trials. Plaintiff has his interests in line with all other lawful and licensed used car dealerships in the State of California and has no antagonism with any proposed Plaintiff Class Members.

31. **Superiority**: The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein, as follows:

      a. This case involves large corporate Defendants and a sufficiently numerous group of individual Plaintiff Class Members with many relatively small claims and common issues of law and fact;

      b. If each individual member of the Plaintiff Class and the Subclasses was required to file an individual lawsuit, the large corporate Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

overwhelm the limited resources of each individual member of the Plaintiff Class and Subclasses with Defendants' vastly superior financial and legal resources;

c. Requiring each individual member of each of the Plaintiff Class and Subclasses to pursue an individual remedy would also discourage the assertion of lawful claims by the members of the Plaintiff Class and Subclasses who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of further anti-competitive conduct and permanent damage to their lawful dealership and business establishments;

d. Proof of a common business practice or factual pattern, which the members of the Plaintiff Class and Subclasses experienced, is representative of the Plaintiff Class and Subclasses herein and will establish the right of each of the members of the Plaintiff Class and Subclasses to recover on the causes of action alleged herein;

e. The prosecution of separate actions by the individual members of the Plaintiff Class and Subclasses, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Plaintiff Class and Subclasses against Defendants; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual members of the Plaintiff Class and Subclasses which would, as a practical matter, be dispositive of the interest of the other members of the Plaintiff Class and Subclasses who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Plaintiff Class and Subclasses to protect their interests; and

- 20 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

f.  The claims of the individual members of the Plaintiff Class and Subclasses are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto without aggregation of claims and losses attributed to Defendants' illegal and anti-competitive conduct.

g.  Furthermore, as the damages suffered by each individual member of the Plaintiff Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Plaintiff Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

h.  The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgment.

i.  Finally, the alternative of filing individual complaints or claims through administrative process with the California DMV is not superior, given the lack of discovery in such proceedings, the availability of fewer remedies, and the fact that the losing party has the right to a trial de novo in the Superior Court.

32.   **Existence and Predominance of Common Questions of Fact and Law**: There are common questions of law and fact as to the members of the Plaintiff Class and Subclasses which predominate over questions affecting only individual members of the Plaintiff Class and Subclasses including, without limitation:

a.  Whether Defendants' activities in the engagement of used auto sales in the State of California without appropriate and required

- 21 -

DMV and other state, county, and local business licenses violate the UCL and provisions of the California Vehicle Code such that said Defendants are engaged in unfair, deceptive, and illegal business acts or practices in violation of Business & Professions Code sections 17200-17208;

b. Whether the Plaintiff Class and UCL Subclass Members are entitled to restitution due to lost or diminished sales as a direct and legal result of Defendants unlawful and unlicensed dealer sales activities for used vehicles in the State of California;

c. Whether Defendants engaged in false and misleading advertising of used vehicles in the State of California in violation of the FAL, Cal. Business & Professions Code section 17500, when advertising a list price of a vehicle but without a required disclosure and/or disclaimer that the list price excludes tax, title, license costs, that are necessarily incurred in the transfer or sale of a used vehicle;

d. Whether the Plaintiff Class and Subclass Members are entitled to treble damages as a proximate and legal result of Defendants' engagement in illegal and anti-competitive "loss leader" business practices by failing to pay the true costs of doing lawful business as a used vehicle dealer in the State of California in violation of the UPA, Cal. Business & Professions Code sections 17030-17044;

e. Whether Plaintiff and the Plaintiff Class can obtain "treble damages" under the UPA for loss-leader conduct;

f. Whether the members of the Plaintiff Class and Subclasses are entitled to injunctive and/or declaratory relief;

g. Whether the members of the Plaintiff Class and Subclasses are

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

entitled to restitution;

h.  Whether Defendants are liable for pre-judgment interest; and

i.  Whether Defendants are liable for attorneys' fees and costs.

33.  **Manageability and Superiority of Class Action Procedure**: The nature of this action, and the nature of laws available to Plaintiff, makes use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein. Plaintiff and proposed Class Counsel will obtain necessary consultants, economists, and accountants that can review the books, sales reports, and DMV sales transaction records, and articulate the nature of the claims for restitution, damages, and disgorgement of ill-gotten profits by Defendants. Defendants' liability as a "loss leader" and anti-competitive conduct will be shown through representative corporate witness testimony, marketing, and public filings by Defendants with the Security and Exchange Commission and other announcements, press releases, and publicly-available statements and admissions as to the CARVANA Defendants' operations as an illegal and unlicensed auto sales dealership in the State of California.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of Business & Profession Code §§ 17200-17208 for Engaging in Unlawful, Unfair, and Deceptive Business Acts and/or Practices (By Plaintiff and each Member of the UCL Subclass as Against each Defendant)**

34.  Plaintiff incorporates all preceding paragraphs of this complaint as though fully set forth herein.

35.  California Business & Professions Code section 17200 prohibits "unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."

36.  California Business & Professions Code section 17203 provides in pertinent part: "Any person who engages, has engaged, or proposes to engage in

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . ."

37.     As alleged above, Defendants have and continue to unlawfully engage in unlicensed auto dealership sales and employ unlicensed and unregulated salespersons in the State of California in violation of California Vehicle Code sections 11713.1, *et seq.*, and lawfully promulgated regulations of the California Department of Motor Vehicles. California Vehicle Code section 11713.1 provides, in pertinent part, that persons engaged in the sales of motor vehicles shall not "[a]dvertise the total price of a vehicle without including all costs to the purchaser at time of sale, except taxes, vehicle registration fees, the California tire fee, as defined in Section 42713.1885 of the Public Resources Code, emission testing charges not exceeding fifty dollars ($50), actual fees charged for certificates pursuant to Section 44060 of the Health and Safety Code, finance charges, and any dealer document processing charge or charge to electronically register or transfer the vehicle." Further, Subsection (c)(1) provides that dealers shall not "[e]xclude from an advertisement of a vehicle for sale that there will be added to the advertised total price at the time of sale, charges for sales tax, vehicle registration fees, the California tire fee, the fee charged by the state for the issuance of a certificate of compliance or noncompliance pursuant to a statute, finance charges, a charge to electronically register or transfer the vehicle, and a dealer document processing charge." A seller satisfies this obligation if the advertisement is worded in substantially the following

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

form: "Plus government fees and taxes, any finance charges, any dealer document processing charge, any electronic filing charge, and any emission testing charge." California Vehicle Code § 11713.1(c)(2).

38.     Here, after review of multiple internet advertisements made by the CARVANA Defendants, each of them only discloses a base price for a vehicle and fails to disclose that the price does not include taxes, title, license, and transfer fees, in violation of law. This "bait and switch" advertisement violates California Vehicle Code section 11713.1(o). All other used car dealerships licensed by the DMV are required to include this language, and to maintain a fixed permanent business location of the vehicle, while CARAVANA does not. This conduct harms and injures competition by allowing for CARVANA to play by a separate set of rules, that are otherwise required of any entity wishing to engage in retail vehicle sales in the State of California.

39.     Further, the CARVANA Defendants fail to comply with the prominent display of an affixed "Buyers Guide" as required by the Federal Trade Commission ("FTC") pursuant to 16 C.F.R. Part 455 and Vehicle Code section 11713.1(t). Defendants' conduct cause of action is brought as a cumulative remedy as provided in Business and Professions Code section 17205, and is intended as an alternative remedy for restitution for Plaintiff, each Plaintiff Class Member, and each UCL Subclass Member, for the time period, or any portion thereof, commencing within four (4) years prior to the filing of this complaint, and as the primary remedy for Plaintiff, each Plaintiff Class Member, and each UCL Subclass Member for the time period of the fourth year prior to the filing of this complaint, as such one-year time period exceeds the statute of limitations on statutory claims.

40.     As a direct, legal, and proximate result of the Defendants' unlawful and unfair business practices, Plaintiff and members of the proposed UCL Subclass have suffered injury in fact and harm in terms of lost sales and diminished profits in order to try to compete with the CARVANA Defendants, who illegally and unfairly fail to

pay the overhead costs necessary to run and operate a lawful and licensed auto dealership with licensed salespersons. When Defendants fail to comply with such requirements and regulations of the California DMV and the California Vehicle Code, not only does it cause injury to lawful competitors, but also harms the general public. Defendants simply claim they are not required to play by the same rules as other retail sellers of used vehicles in the State of California. By having no fixed physical location and being based outside of the State of California, Defendants attempt to insulate themselves from exposure to fraud, cheating, misrepresentations, deceptions, and failure to comply with basic disclosure requirements in advertising and not paying their dues to operate as a business in California. They are essentially a free-rider with access to the most vehicle driven and populous state in the nation, while Plaintiff and others are paying full-fare to operate their businesses in compliance with law. Accordingly, Plaintiff will seek for himself, and other similarly-licensed dealerships authorized by the DMV to engage in used auto sales, restitution from the Defendants based on lost or diminished sales and lowered profit margins caused by Defendants' unlawful, unfair, and deceptive business practices, in an amount according to proof.

41.   Plaintiff requests and will seek an order declaring that Defendants' conduct of operating a used vehicle sales operation in California without appropriate DMV licensure constitutes unfair competition. Further, Plaintiff will seek orders granting preliminary and permanent injunctive relief prohibiting CARVANA from engaging in sales transaction of used motor vehicles in the State of California, until such time as it is in full compliance with all state, local, and county licensing procedures, including required fixed and permanent business locations for sales transactions and any selling of "certified" used vehicles without a BAR certification license. As a result of CARVANA operating as a dealer, without paying proper fees for licensure to the DMV and the State of California (and local business licensing and Board of Equalization licensing), Plaintiff will seek to have CARVANA cease

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint                     Case No. 2:19-cv-01302-TLN (CKD)

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

and desist operations for cheating California consumers, taxpayers, and competitors, by acting as a free-rider with full access to all California consumers.

42.     Further, in addition to restitution, declaratory, and injunctive relief, Plaintiff will seek an award of reasonable attorneys' fees and costs, expenses for an accounting, based on enforcement of a key and critical matter of public and concern pursuant to California Code of Civil Procedure section 1021.5, in an amount according to proof and subject to Court approval.

## SECOND CAUSE OF ACTION
**Violations of the False Advertising Law ("FAL"), Cal. Business & Professions Code §§ 17500, *et seq*.**
**(By Plaintiff and all Members of the FAL Subclass Against all Defendants)**

43.     Plaintiff incorporates all preceding paragraphs of this complaint as if fully alleged herein.

44.     California Business & Professions Code sections 17500, *et seq*. prohibit untrue or misleading advertising that is known, or which reasonably should be known, to be untrue or misleading. A violation of California Business & Professions Code sections 17500, *et seq*. is also a violation of sections 17200, *et seq*., which prohibits "any unfair, deceptive, untrue or misleading advertising." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210 (Cal. 1983).

45.     Vehicle Code section 11800 states that "[i]t shall be unlawful for any person to act as a vehicle sales person without first having procured a license or temporary permit issued by the [DMV]." Vehicle Code section 675 defines a "vehicle salesperson" in part as any person who under "any form of contract, agreement or arrangement with a dealer, for commission, money, profit or other thing of value, sells, exchanges, buys or offers for sale, negotiates or attempts to negotiate a sale or exchange of an interest in a vehicle." Maintaining and procuring a dealership license or salesperson license from the DMV requires payment of recurring and renewal fees, continuing consumer education and the requirement to

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

be identified and use live-scan approval pursuant to Vehicle Code section 11820. For most dealerships, like Plaintiff's, this cost to maintain licensing and compliance costs several thousands of dollars per year, especially to maintain a required and fixed permanent commercial retail business location to operate as a lawful dealership in the sale of motor vehicles.

46. The CARVANA Defendants engage in used auto sales in the State of California without procuring a dealership license, without procuring a fixed and permanent business location, and without salesperson licensing required by the California Vehicle Code and applicable DMV regulations, all to the detriment of dealers and salespersons, like Plaintiff, who incur substantial costs of overhead to maintain and renew their business and dealership licenses and remain current with the DMV. In fact, the CARVANA Defendants' website flaunts the fact that they do not comply with dealership requirements by the false claim that they are not a "dealership" when in fact their entire business model is to engage actively in the sale of used vehicles in the State of California with increasing and larger market presence throughout the state since 2017-2018.

47. As a direct, legal, and proximate result of Defendants' illegal, unfair, and deceptive conduct and business practices, Plaintiff and members of the proposed FAL Subclass have suffered actual harm and injury in the loss or diminishment of sales directly related to the unfair and anti-competitive advantage exploited by CARVANA. Plaintiff, on behalf of himself and others similarly situated, will seek restitution from Defendants in an amount according to proof.

48. Defendants' conduct and engagement in false and deceptive business practices, which includes engaging in used auto sales without a valid DMV or local business license, the use of advertisements that fail to disclaim and disclose that the list price for a vehicle does not include tax, title, license, and transfer fees, and the failure to maintain a fixed business address for any disputes and to claim certification of used vehicles without a qualified BAR license or certification, and

who fail to prominently display required FTC Buyer Guide data on each vehicle constitutes a fraud on the public and is anti-competitive to those entities and individuals who comply with law. Defendants even gloat that they are able to offer similar vehicles at lower cost than other "dealers" because they cut out the middle-man, do not have physical premises, and do not maintain requisite licensure. Without payment of these overhead fixed costs, the CARVANA Defendants are able to sell vehicles at below otherwise retail costs to the public as a "loss leader," to the detriment of lawfully acting competitors and with limited recourse by the public for any vehicle transaction gone wrong.

49. Plaintiff requests and will seek an order declaring that Defendants' conduct of operating a used vehicle sales operation in California without appropriate DMV licensure constitutes unfair competition. Further, Plaintiff will seek orders granting preliminary and permanent injunctive relief prohibiting CARVANA from engaging in sales transaction of used motor vehicles in the State of California, until such time as it is in full compliance with all state, local and country licensing procedures, including required fixed and permanent business locations for sales transactions and a BAR certification license. As a result of Defendants operating as dealers, without paying proper fees for licensure to the DMV and the State of California (and local business licensing and Board of Equalization licensing), Plaintiff will seek to have Defendants cease and desist operations for cheating California consumers, taxpayers, and competitors, by acting as a free-rider with full access to all California consumers.

50. In addition to restitution, declaratory, and injunctive relief, Plaintiff will seek an award of reasonable attorneys' fees and costs, expenses for an accounting, based on enforcement of a key and critical matter of public concern pursuant to California Code of Civil Procedure section 1021.5, in an amount according to proof and subject to Court approval.

## THIRD CAUSE OF ACTION

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 29 -

**Violations of the Unfair Practices Act (UPA), Cal. Business & Professions Code §§ 17000-17044 (Loss Leader Anticompetitive Conduct)**
**(By Plaintiff and all Members of the UPA Subclass as against All Defendants)**

51.     Plaintiff incorporates all preceding paragraphs of this complaint as though fully set forth herein.

52.     California Business & Professions Code section 17001 (the Unfair Practices Act or UPA) provides: "The Legislature declares that the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented."

53.     California Business & Professions Code section 17002 states that "[t]his chapter shall be liberally construed that its beneficial purposes may be served."

54.     California Business & Profession Code section 17026 defines "Costs" as "as applied to production includes the cost of raw materials, labor, and all overhead expenses of the producer" and section 17029 provides that "[c]ost of doing business" or "overhead expense" means all costs of doing business incurred in the conduct of the business and shall include without limitation the following items of expense: labor (including salaries of executives and officers), rent, interest on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising.

55.     California Business & Professions Code section 17030 defines "loss leader" as "any article or product sold at less than cost:

        (a)     Where the purpose is to induce, promote or encourage the purchase of other merchandise; or

        (b)     Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or

        (c)     Where the effect is to divert trade from or otherwise injure

- 30 -

competitors."

56.    California Business & Professions Code section 17044 states: "It is unlawful for any person engaged in business within this State to sell or use any article or product as a "loss leader" as defined in Section 17030 of this chapter."

57.    California Business & Professions Code section 17070 states: "Any person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages."

58.    Defendants' public filings, public statements, and press releases, as well as Defendants' website, all demonstrate that the CARAVANA Defendants, including DOE Defendants, and any officers, directors, and managing agents, had and continue to have express intent to sell vehicles in the State of California without compliance with licensing, advertising, and other laws and regulations promulgated by the DMV, for the express reason of lowering retail costs of used vehicle sales by not paying overhead, costs, rent, commissions, or compliance with basic disclosures and certification requirements as otherwise imposed on dealerships and salespersons lawfully licensed in California. Plaintiff reasonably estimates that Defendants' conduct in loss leader activity allows them to take less than a 50% profit margin on vehicles sales as compared to licensed dealers and "vehicle salespersons." For example, if Plaintiff and proposed Class Members require at least a $500 profit margin to continue fixed overhead cost maintenance for the sale of used vehicles, Plaintiff estimates, subject to review of accounting and books as expressly permitted by California Business & Professions Code section 17084, that the CARVANA Defendants can continue operations for only $250 net profit margin per unit sold since they do not pay (and gloat about that fact in their marketing and SEC filings) licensing and physical business location overhead costs otherwise required by all other retail sellers of vehicles.

59.    The UPA provides that "[i]n any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

the threat thereof, to the plaintiff. But, in addition to injunctive relief, any plaintiff in any such action shall be entitled to recover three times the amount of the actual damages, if any, sustained by the plaintiff, as well as three times the actual damages, if any, sustained by any person who has assigned to the plaintiff his claim for damages resulting from a violation of this chapter." In this case, Plaintiff reasonably estimates that since CARVANA entered the California market and engaged in below cost (no overhead) loss leader conduct, that he has lost over 100 sales and expected profits of over $50,000 since July 2017, subject to confirmation by accounting. Plaintiff will seek treble damages legally and proximately caused by Defendants' anti-competitive conduct and false advertising, in an amount according to proof on behalf of himself and other lawfully licensed retail dealerships in the State of California during the proposed Class Period.

60. Plaintiff will also seek declaratory and preliminary/permanent injunctive relief from the Court to (1) demonstrate that the CARAVANA Defendants are actively engaged in used auto sales, leasing, and finance in the State of California without compliance with all licensing and location requirements for dealers and salespersons as mandated by the Vehicle Code and DMV regulations and (2) that Defendants' conduct is anti-competitive loss leader conduct by failing to pay market entry costs and overhead necessary to engage in used vehicle retail sales in the State of California, and will seek to enjoin further retail sales activity until such time as the Defendants comply with dealership and salesperson licensing laws and regulations.

61. Pursuant to either California Code of Civil Procedure section 1021.5 or as permitted by California Business & Professions Code section 17082, Plaintiff will seek reasonable attorney's fees and costs of suit in an amount according to proof and subject to Court approval.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing allegations, Plaintiff prays for

- 32 -

judgment as follows:

    a.  That the Court issue an Order certifying that this action may be maintained as a class action as permitted by Federal Rules of Civil Procedure 23, and certify the Plaintiff Class and Subclasses herein, appointing the named Plaintiff, KEITH SCHRENK, as representative of all others similarly situated, and appointing the law firm of Cohelan Khoury & Singer as adequate class counsel for the members of the proposed Plaintiff Class and Subclasses;

**<u>As to the First Cause of Action for Violations of the UCL:</u>**

    b.  For restitution and/or lost or diminished sales for the Plaintiff Class and the UCL Subclass legally caused by Defendants' anti-competitive business acts and/or unlawful, unfair, and deceptive business practices, in an amount according to proof;

    c.  For an accounting, under administration of Plaintiff and/or the receiver and subject to Court review, to determine the amount restitution owed, and the amounts to be paid to members of the Plaintiff Class and Subclasses, subject to court approval and in an amount according to proof;

    d.  For an Order directing state and local governmental agencies to identify each of the members of the Plaintiff Class and Subclasses by name, address and licensure as vehicle dealerships under the California Vehicle Code;

    e.  For an Order requiring Defendants to make full restitution and payment to the Plaintiff Class and the UCL Subclass due to unfair competition, including disgorgement of their wrongfully obtained profits, pursuant to California Business and Professions Code sections 17203 and 17204;

    f.  For an Order granting preliminary and/or permanent injunction prohibiting Defendants from continuing the illegal course of conduct, alleged herein;

    g.  That Defendants further be enjoined to cease and desist from unfair competition in violation of sections 17200, *et seq*. of the California Business and Professions Code;

    h.  That Defendants be enjoined from further acts of restraint of trade or unfair competition;

    i.  For the creation of an administrative process or constructive trust wherein each injured member of the Plaintiff Class and Subclasses may submit a claim in order to receive restitution for losses sustained as a

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 33 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

result of Defendants' unlawful, unfair, and deceptive business acts and/or practices;

j.  For all legal pre-judgment and post-judgment interest to the extent permitted by law;

k.  For an award of attorneys' fees and costs incurred in the investigation, filing and prosecution of this action pursuant to Civil Code section 1021.5, Business and Professions Code sections 17200, *et seq*., and/or any other applicable provision of law;

**As to the Second Cause of Action for Violations of the FAL:**

l.  For declaratory relief in determining that Defendants engage in false, misleading, and deceptive advertisements by failing to include disclaimer and notation that all vehicle pricing is subject to taxes and title and license fees (or other dealer fees) as required by the California Vehicle Code and by regulations promulgated by the California Department of Motor Vehicles;

m.  For an Order granting preliminary and/or permanent injunctive relief so as to require advertisements for used vehicle sales by Defendants to include required language as to pricing, identify a fixed permanent business location and to require Defendants to otherwise comply with conditions for engaging in dealership and salesperson auto sales in the State of California;

**As to the Third Cause of Action for Violations of UPA:**

n.  For recovery of actual damages incurred by Plaintiff and members of the UPA Subclass as a legal result of Defendants' "loss leader" anti-competitive conduct, in an amount according to proof;

o.  For an award of *treble damages* as permitted by law based on Defendants' anti-competitive "loss leader" conduct in violation of Business & Professions Code sections 17030-17044, in an amount according to proof;

p.  For an order granting preliminary and/or permanent injunctive relief as permitted by California Business & Professions Code section 17070 so as to enjoin Defendants from engaging in dealership sales of used motor vehicles without a dealership and salesperson licensing as required by Vehicle Code section 285;

q.  For an award of reasonable attorneys' fees and costs of suit as required by California Business & Professions Code section 17082, or alternatively, to the extent permitted by California Civil Code section

- 34 -

1021.5 based on a theory of obtaining a public benefit by enforcement of important public policies recognized by the State of California for lawful competition and transparency for auto sales to the public at large;

**As to All Causes of Action:**

r.   For any pre-judgment or post-judgment interest on fixed and ascertainable actual damages, to the extent permitted by California law, according to proof, at the legal rate of interest (10% per annum);

s.   For recovery of civil penalties, if any, to the extent permitted to be recovered by Plaintiff acting as a private attorney general in the enforcement of California's Unfair Competition Law, False Advertising Law and Unfair Trade Practices Act, in an amount according to proof and subject to Court approval;

t.   For costs of suit to the extent authorized by California Business & Profession Code section 17082 and/or California Code of Civil Procedure sections 1032-1033.5;

u.   For reasonable attorneys' fees and costs incurred, including expert fees, as required to maintain a class action and for obtaining a public benefit to ensure fair competition to the extent permitted by California Business & Professions Code section 17082 and/or Code of Civil Procedure section 1021.5, subject to Court approval;

v.   For such other and further relief as this Court may deem equitable, just and proper.

Dated: November 23, 2020         COHELAN KHOURY & SINGER


By: s/ J. Jason Hill

J. Jason Hill

Attorneys for Plaintiff KEITH SCHRENK


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.


Dated: November 23, 2020         COHELAN KHOURY & SINGER

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 35 -

1

By: s/ J. Jason Hill
J. Jason Hill
Attorneys for Plaintiff KEITH SCHRENK

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint                    Case No. 2:19-cv-01302-TLN (CKD)